EASTERN DIST.
January, 1832.

SWIFT
vs.
WILLIAMS
ET ALS.

## SWIFT vs. WILLIAMS ET ALS.

APPEAL FROM THE COURT OF THE EIGHTH DISTRICT, THE JUDGE OF THE THIRD PRESIDING.

The acts of Congress granting donations of land on settlement rights, expressly gives the preference in case of conflict to that which is based on a written evidence of claim derived from the Spanish government.

In a petitory action the plaintiff must recover upon the strength of his own title, and it makes part of that strength that he should show that his title covers the land in dispute.

The facts are fully stated in the opinion of the court, delivered by *Porter, J.*

This is a petitory action. The plaintiff claims under a donation from the government of the United States, predicated on an order of survey by the Spanish government of date November, 1806. A survey was made of the premises in conformity to the order, and is annexed to the original title.

The defendants produced a donation from the United States founded solely on the fact of previous settlement. No title, or commencement of title, from the government of Spain is shown by them.

The cause was submitted to a jury in the court of the first instance, who found a verdict for the defendants. The plaintiff made an unsuccessful attempt to obtain a new trial, and appealed.

EASTERN DIST.
January, 1832.

SWIFT
vs.
WILLIAMS
ET ALS.

The case presents two questions—one of law, the other of fact.

On the former, there is no doubt the plaintiff's title is better than defendant's. The act of Congress which makes these donations, expressly gives the preference in case of conflict, to that which is based on a written evidence of claim derived from the Spanish government. In the case of *Higgins* vs. *McMicken*, which was decided upon statutory provisions, in no material respect distinguishable from that now before us, we held that the donees must take on such conditions as the donor thought proper to attach to his gift. 1 *Louisiana Reports*, 53. *Land Laws*, 758.

The act of Congress granting donations of land on settlement rights, expressly gives the preference in case of conflict, to that which is based on a written evidence of claim derived from the Spanish government.

On the question of fact whether the respective titles embrace the same premises, the case is not so clear. The order of survey under the Spanish government is for twenty arpents of land front, with the ordinary depth, *on the river Amite.* The commissioners of the United States in confirming it as a donation, designate the tract by merely stating that it is in the parish of St. Helena, and that it was claimed under the "*recommendation*" from the Spanish government of the seventh of November, 1806.

The plat of survey shows twenty arpents in front to have been surveyed for the claimant on the River Amite, bounded below by a tract of one thousand arpents surveyed for the same claimant, or at least for a person bearing his name; and above by lands of Don Manuel Lopez. A creek is designated on the plat of survey as rising in the tract of land; which creek taking a course diagonal to the river Amite, falls into that stream a short distance below the lower line of the plaintiff. An island in the river is also marked on the plat, one-half of which appears to be opposite the land laid off to the petitioner. The other half is represented to be in front of the tract surveyed for Lopez.

Eastern Dist.
January, 1832.

SWIFT
vs.
WILLIAMS
ET ALS.

The calls in the donation to the defendant are a great deal more specific. They are as follow : " To begin on Black Creek at the west line of Young Blood's, and run thence· down the said creek to the section line, below thence with the said section line to the Amite River. Thence up the river or across one prong of the river and into the island, so as to. include the island in the survey, and up the river to the line of William Williams, and with said line to the line of Young Blood, and with Young Blood's line to the beginning so as to include six hundred and forty acres."

One of the chain carriers at the time the original survey was made by the plaintiff, in the year 1804, was introduced ; he swears to the fact of being present in· the character just stated, and adds the defendants were living on the land at the time the suit was instituted.

On his cross examination he states that there are two islands in the river Amite ; and that there was no stream within the survey of McElroy by the name of Black Creek to witness's knowledge.

In a petitory action the plaintiff must recover upon the strength of his own title, and it makes part of that strength that he should show that his title covers the land in dispute. The defendants plead the general issue, and the plaintiff must recover on the strength of his title. It necessarily makes a part of that strength, that he should show the con- cession from the government to him, covers the land claimed by the defendants. The sole testimony to that effect is the oath of the chain carrier, who, twenty-seven years after the survey was made, swears the *locus in quo* is the land then surveyed for McElroy. The island in the River Amite would be a great means of identifying the original location, but this witness swears there are two islands in that river. Conse- quently it does not follow that the island contained in their, the defendants' donation, is that represented in the plaintiff's survey. The credit due to the witness is weakened by his ·acknowledgment that there was no such a creek as Black Creek, for which the defendant's title calls, within the land surveyed for the plaintiff's testator. No attempt was made to show that this name has been given to the creek since the period of the original survey. The case of the plaintiff is again weakened by the absence of all proof to establish the

lines run, or the existence of the marked trees. Nor was any evidence given to prove the location of the grant of Lopez, for which the plaintiff calls as an upper boundary, nor of the other survey, on which it states to bind below. And if these things were susceptible of proof, we cannot suppose it possible the petitioner would have neglected to give evidence of them. The proof on the part of the petitioner is quite too weak to authorise us to give judgment for him in opposition to a verdict of a jury, and the opinion of a judge who saw and heard, who perhaps knew the witness, and who at all events had better means than we possess of judging of the credibility which ought to be attached to his testimony.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, be, affirmed with costs.